1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 1**

**COMPLAINT**

Stephen E. Abraham
—— LAW OFFICES ——
1592 Pegasus Street
Newport Beach, CA
92660
(949) 878-8608

Perez v Hope & Happy - Notice of Removal

PROOF OF SERVICE

Jong Yun Kim (SBN 272176)
**LAW OFFICES OF JONG YUN KIM**
3600 Wilshire Blvd., Suite 2226
Los Angeles, CA 90010
Tel: (213) 351-9400
Email: jongkimlaw@hotmail.com

Attorney for Plaintiff.
**LORRAINE PEREZ**

Electronically FILED by
Superior Court of California,
County of Los Angeles
4/15/2025 1:02 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Tarasyuk, Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| LORRAINE PEREZ, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>HOPE & HAPPY, LLC, a California limited liability company; and DOES 1-25;<br><br>Defendants. | CASE NO.: 25STCV11024<br><br>Assigned to:<br><br>**VERIFIED COMPLAINT FOR VIOLATIONS OF:**<br><br>**AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181,** *et seq.*;<br>**UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51,** *et seq.*<br><br><br>DEMAND FOR BENCH TRIAL |

1

**VERIFIED COMPLAINT**

Plaintiff LORRAINE PEREZ (hereinafter referred to as "Plaintiff"), complains of HOPE & HAPPY, LLC, a California limited liability company and Does 1-25 ("Defendant"), and alleges as follows:

## I.  PARTIES

1.     Lorraine Perez is a California resident with physical disabilities. Plaintiff has significant impairment in her right knee and right foot. Plaintiff was born with a condition that caused the lower extremity of her right leg to turn inward. Plaintiff's condition has caused her to experience constant pain. Plaintiff has trouble walking, standing, and sitting for long periods of time. Plaintiff relies on a cane and sometimes a walker. Plaintiff is a disabled person under the California Unruh Civil Rights Act. ("UCRA") (*see* Cal. Civ. Code §§ 51, et seq., 52, et seq.), the Americans with Disabilities Act ("ADA") (*see* 42 U.S.C. § 12102, et seq.), and other statutory laws that protect the rights of "disabled persons."

2.     Plaintiff desired to access Defendant's/Defendant's business to patronize the business.

3.     Defendant HOPE & HAPPY, LLC own/owned the property (the "Property") located at 1900 West 6th Street, Los Angeles, California 90057 at all relevant times.

4.     There is a business establishment on the Property named "JACK IN THE BOX" (the "Business").

5.     Defendant HOPE & HAPPY, LLC own/owned the Business named "JACK IN THE BOX" and has/had control over its Business at all relevant times.

6.     The Business is a public accommodation as defined by 42 U.S.C. § 12181(7), and California Health and Safety Code § 19955.

7.     Plaintiff visited the Business. Plaintiff has reasons for the visits and has reasons to want to go back but for the access barriers.

8.     Does 1 through 25 were at all relevant times lessors, lessees, property owners, subsidiaries, parent companies, employers, employees, agents, corporate officers, managers, principles, and/or representatives of Defendants. Plaintiff is unaware of the true names and capacities of Defendants sued herein as Does 1 through 25, inclusive, and, therefore, sues those Defendants by fictitious names. Plaintiff requests that the Court grant leave to amend this complaint to allege the true names and capacities when determined by whatever source.

9.     Plaintiff alleges that Defendants, at all relevant times, were relevant to this action; were the owners, franchisees, lessees, general partners, limited partners, agents, employees, employers, representative partners, subsidiaries, partner companies, and/or joint ventures of the remaining

Defendants; and were acting within the course and scope of that relationship. Plaintiff is further informed and believes and alleges that each of the Defendants gave consent to, ratified, and/or authorized the acts alleged of each of the remaining Defendants.

10.     Plaintiff visited the public accommodations owned, leased, and/or operated by Defendants with the intent to purchase and/or use the goods, services, facilities, privileges, advantages, and/or accommodations offered by Defendants.

11.     The Defendant's cost to fix their Property to be in compliance with the law is infinitesimally small compared to the value of just this Property.

12.     Specifically, Plaintiff is informed and believes that the total cost to remove the barriers encountered by Plaintiff will be less than or equal to $7,000.00.

13.     Plaintiff is informed and believes that the cost to provide an asphalt overlay to level the parking area and the adjacent loading/unloading access aisle and to re-paint the parking area and the adjacent access aisle is $3,500.00.

14.     Plaintiff is informed and believes that the cost to remove the uneven asphalt/concrete on the paths of travel from the designated disabled parking space building/Business and between the service facilities on the Property will be less than or equal to $2,500.00.

15.     Plaintiff is informed and believes that the cost to install each sign identifying the designated disabled parking space to a compliant height and location will be less than or equal to $300.00.

16.     Plaintiff is informed and believes that the cost to install the "Van Accessible" signage will be less than or equal to $100.00.

17.     Plaintiff is informed and believes that the cost to install the "Minimum Fine $250" signage will be less than or equal to $100.00.

18.     Plaintiff is informed and believes that the cost to install the California R-100B signage will be less than or equal to $100.00.

19.     Plaintiff is informed and believes that the cost to paint marked path of travel between the service facilities will be less than or equal to $800.00.

20.     The relative cost of remediation is quite small compared to the high value of the Property, which is conservatively valued at $3,493,700.00 but probably has a much higher market value.

21.     The Property's owners and operators saved money on remediations and maintenance as well as the money saved when they cut corners when initially designing the Property and its buildings.

3

**VERIFIED COMPLAINT**

The Defendants saved in at least three ways. Even if they finally bring the Property into minimal compliance, they have avoided the necessary business costs that other law-abiding property owners did not avoid. This unfair refusal to follow the law gave Defendants an unfair business advantage over their law-abiding counterparts. If property owners are allowed to avoid minimal compliance until a lawsuit is filed, then the Courts will be overwhelmed, and compliance with the law will be discouraged.

## II. JURISDICTION & VENUE

22.     This Court has subject matter jurisdiction over this action. The Court also has personal jurisdiction over Defendants because Defendants conducted and continue to conduct substantial business in California; Plaintiff's claims arose in California; and Defendant's facility, Property, and/or Business are available for patronage in California. The access barriers described by Plaintiff were experienced in California.

23.     Venue is proper in this Court because Defendants conduct substantial business in this county, and the real property that is the subject of this action is located in this county. Venue is also proper because Plaintiff's cause of action arose in this county.

## III. FACTS

24.     The Property and/or the Business owned, leased, and/or operated by Defendants is a facility that is open to the public and includes a business establishment

25.     The Property has been newly constructed, and/or underwent remodeling, repairs, and/or alterations since 2021, and Defendants have failed to  comply with California access standards that applied at the time of each new construction and/or alteration or failed to maintain accessible features in operable working condition.

26.     Plaintiff visited the Property during the relevant statutory period on, two (2) separate occasions, on February and March 2025, to patronize the Business on the Property.

27.     The premises violated applicable California and federal construction-related accessibility standards, including Title 24 of the California Code of Regulations (California Building Standards Code), Part 36 of Title 28 of the Code of Federal Regulations (28 CFR Part 36), the ADA Standards for Accessible Design ("ADAS"), and the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG").

4

VERIFIED COMPLAINT

28.     Defendants did not offer persons with disabilities equivalent facilities, privileges, and advantages offered by Defendants to other patrons.

29.     Plaintiff encountered barriers, both physical and intangible, that interfered with, and denied, Plaintiff the ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property.

30.     Parking, route(s) of travel, signage, Business entrance, Business interior, and other architectural amenities for patrons visiting the Property are among the facilities, privileges, and advantages offered by Defendants to patrons of the Property.

31.     However, there were inadequate accessibility features for disabled persons at the Property. Defendant's facilities did not comply with the ADAS, ADAAG, and/or the California Building Code ("CBC").

32.     When Plaintiff visited the Property, Plaintiff experienced multiple access barriers, including but not limited to barriers related to parking, route(s) of travel, and signage. This list of barriers and violations is not exhaustive or completely inclusive. There are other barriers that Plaintiff encountered at Defendant's Property and Business.

Plaintiff encountered the following barriers at Defendant's facilities:

**This Property, which serves the Business, JACK IN THE BOX, has major UNRUH/ADA violations throughout.**

**In particular, the sign identifying each designated disabled parking space must be permanently posted either immediately adjacent to the parking space, or within the projected parking space width at the head end of the parking space, posted at a minimum height of 60 inches (5 feet) from the ground surface (1991 ADAS § 4.6.4; 2010 CBC § 1129B.4; 2019 CBC § 11B-502.6.3). The signs identifying the designated disabled parking spaces at the Property are not installed. Plaintiff needs to be able to locate the designated disabled parking space and the adjacent access aisle to safely park, disembark from the vehicle, and unload. The designated handicap stall adjacent to the access aisle must include "Van Accessible" signage (§ 11B-502.6). Due to the lack of proper parking signage,  Plaintiff experienced difficulty and frustration because it was difficult to locate and identify the designated disabled parking area without the proper signage. It was**

VERIFIED COMPLAINT

further frustrating because Plaintiff knows from prior experiences that the lack of compliant signage will make it more likely that non-disabled patrons will improperly park in the designated disabled parking space, as they would not be adequately deterred.

The route of travel, which is installed from the designated disabled parking area to the Business entrance of the Property, is installed on uneven ground surface with excess changes in level (of more than one-half inch without a ramp and/or more than one-quarter inch without a bevel) (1991 ADAS §§ 4.5.2, 4.6.8; 2010 ADAS §§ 302.1, 303.1, 303.2, 303.3, 303.4; 2010 CBC §§ 1120B.2, 1133 B.7.1, 1133B.7.4; 2019 CBC §§ 11B-303.1, 11B-303.2, 11B303.3, 11B-303.4, 11B-303). The ground is not flush or flat. The ground has pavement distresses. Plaintiff found it difficult and frustrating to not only be unable to recognize the route of travel, but also to traverse in this area on an unlevel surface. Plaintiff had to navigate even more carefully and was overly concerned and fearful in order to prevent injury. The lack of a stable, firm, and slip resistant ground surface in the route of travel denied Plaintiff full and equal use or access to the Property when Plaintiff visited.

A true and correct copy of photographs of the alleged violations of the Property are attached hereto as "Exhibit 1."

33.     Plaintiff personally encountered the foregoing barriers on (and the foregoing barriers existed) during each and every one of Plaintiff's visits.

34.     These inaccessible conditions denied Plaintiff full and equal access, and caused Plaintiff difficulty, humiliation, embarrassment, and/or frustration.

35.     Defendants knew that the foregoing architectural barriers prevented access. Plaintiff will prove that Defendants had actual knowledge that the architectural barriers prevented access, and that the noncompliance with the ADA Standards for Accessible Design ("ADAS"), ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"), and/or the California Building Code ("CBC") was intentional.

36.     Plaintiff intends and plans to visit the Property again soon. Currently, Plaintiff is reasonably deterred from returning to Defendant's public accommodation facilities because of the

6

VERIFIED COMPLAINT

knowledge of barriers to equal access, relating to Plaintiff's disabilities, that continue to exist at the Property.

37.    Defendants failed to maintain in working and usable conditions those features necessary to provide ready access to persons with disabilities.

38.    Defendants have financial resources to remove all the aforementioned barriers without much expense or difficulty in order to make their Property and Business more accessible to their mobility impaired customers. The removal of these barriers is readily achievable. The United States Department of Justice has determined that removal of these types of barriers is readily achievable.

39.    On information and belief, Plaintiff alleges that Defendants refuse to remove all of the aforementioned barriers.

40.    On information and belief, Plaintiff alleges that Defendant's failure to remove all of the aforementioned barriers was/is intentional, because the barriers are logical and obvious. During all relevant times, Defendants had authority, control, and dominion over these conditions; thus, the failure to provide accessible facilities was not a mishap, but rather an intentional act.

41.    These barriers to access are described herein without prejudice to Plaintiff citing additional barriers to access after further inspection by Plaintiff's experts and/or access agents. *See Doran v. 7-ELEVEN, Inc.*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, a plaintiff can sue to have all barriers that relate to his or her disability removed, regardless of whether he or she personally encountered them); *Thurston v. Midvale Corp.*, 39 Cal. App. 5th 634 (2019).

## IV. FIRST CAUSE OF ACTION:

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990

### (42 U.S.C. § 12101, *et seq.*)

### (Against All Defendants)

42.    Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

43.    Title III of the ADA prohibits discrimination against any person on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation. 42 U.S.C. § 12182(a).

7

**VERIFIED COMPLAINT**

44.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges, and/or accommodations they offered during each visit, and each incident of a deterred visit.

45.    The acts and omissions of Defendants herein were/are in violation of Plaintiff's rights under the ADA and the regulations codified at 28 C.F.R. Part 36, *et seq.*

46.    Pursuant to the ADA, discrimination is a "failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii).

47.    The ADA requires removal of architectural barriers in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv) ("discrimination includes ... a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, ... where such removal is readily achievable"). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). Barriers are defined by reference to the ADA Standards for Accessible Design (ADAS), found at 28 C.F.R. Part 36, including the ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), at Part 36, Appendix A.

48.    If removal of any barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also prohibited if the alternative methods are readily achievable. 42 U.S.C. § 12182(b)(2)(A)(v).

49.    Defendants can remove the architectural barriers at their facility without much difficulty or expense. Defendants violated the ADA by failing to remove the barriers because removal was readily achievable. For instance, there are companies that can repaint parking areas for as little as $350. Defendants can afford such costs, which are a fraction of what Defendants receive in (rental or business) profits in connection with such a large and expensive property.

50.    Alternatively, if it was not "readily achievable" for Defendants to remove barriers at their facilities, Defendants violated the ADA by failing to make their services available through alternative methods that are readily achievable.

51.    On information and belief, Plaintiff alleges that the facility was altered after January 26, 1992, mandating compliance with accessibility requirements under the ADA.

**VERIFIED COMPLAINT**

52.    . The ADA requires that facilities altered in a manner that affects or could affect their usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).

53.    Defendants altered the facilities at the Property in a manner that violated the ADA, and/or failed to make the Property readily accessible to physically disabled persons to the maximum extent feasible.

54.    The ADA also requires reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii).

55.    Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Property when these modifications were necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or accommodations.

56.    Plaintiff seeks a finding from this Court that Defendants violated the ADA, so that Plaintiff may pursue damages under California's Unruh Civil Rights Act.

57.    Here, Defendant's failure to make sure that accessible facilities were  available to, and ready to be used by, Plaintiff was/is a violation of law.

58.    Plaintiff would like to continue to frequent the Property; however, Plaintiff is deterred from doing so because Plaintiff has been discriminated against and is aware of accessibility barriers at the Property.

59.    Among the remedies sought, Plaintiff seeks an injunction order requiring compliance with federal and state disability access laws, and remediation of the existing access violations (i.e., removal of the existing barriers) at the Property.

//
//
//
//
//
//

9

**VERIFIED COMPLAINT**

## V. SECOND CAUSE OF ACTION:
## VIOLATIONS OF THE UNRUH CIVIL RIGHTS ACT
### (Cal. Civ. Code §§ 51-53)
### (Against All Defendants)

60.     Plaintiff repleads and incorporates by reference, as though fully set forth herein, the allegations contained in all prior paragraphs of this complaint.

61.     California Civil Code § 51 states, in part: "All persons within the jurisdictions of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

62.     California Civil Code § 51 also states, in part: "No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person."

63.     California Civil Code § 51(f) specifically incorporates, by reference, an individual's rights under the ADA into the Unruh Civil Rights Act ("UCRA").

64.     The UCRA also provides that a violation of the ADA, or California state accessibility regulations, is a violation of the UCRA. Cal. Civ. Code § 51(f); *see Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 439 (N.D. Cal. 1994).

65.     Defendant's above-mentioned acts and omissions have violated the UCRA by denying Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, and services they offer, on the basis of Plaintiff's disabilities.

66.     Defendant's above-mentioned acts and omissions have also violated the UCRA by denying Plaintiff's rights to equal access pursuant to the ADA; and, thus, Defendants are liable for damages. See Cal. Civ. Code § 51(f), 52(a).

67.     Because Defendant's violation of the UCRA resulted in difficulty, discomfort, humiliation, frustration, and/or embarrassment for Plaintiff, Defendants are each also responsible for statutory damages. See Cal. Civ. Code § 55.56(a), (c).

68.     Plaintiff was (actually) damaged by Defendant's wrongful conduct. Plaintiff seeks actual damages, and statutory minimum damages of four thousand dollars ($4,000) for each offense.

//
//
//
//

**VERIFIED COMPLAINT**

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1. For injunctive relief compelling Defendants to comply with the Unruh Civil Rights Act. Note: Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and statutory minimum damages of $4,000 per each offense.

3. Reasonable attorney fees, litigation expenses, and costs of suit, pursuant to Cal. Civ. Code § 52.

## **DEMAND FOR BENCH TRIAL**

Plaintiff demands a bench trial on all issues so triable.

Dated: April 15, 2025                                    LAW OFFICES OF JONG YUN KIM


                                                        /s/ Jong Kim
                                                        _____
                                                        Jong Yun Kim, Esq.
                                                        Attorney for Plaintiff
                                                        LORRAINE PEREZ

**VERIFIED COMPLAINT**

## **VERIFICATION**

I, LORRAINE PEREZ, am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge—except as to those matters that are therein alleged on information and belief, and, as to those matters,

I believe them to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: April 15, 2025

/s Lorraine Perez

Lorraine Perez

12

**VERIFIED COMPLAINT**

# Exhibit 1





